The next matter, number 25-1555, Jason Grant et al. versus the Trial Court of the Commonwealth of Massachusetts et al. At this time, would counsel for the appellants please introduce themselves on the record to begin. Mark John Randazza for the appellants, along with my colleague, Jay Marshall-Wallman. Good morning. Good morning, your honors. I'd like to reserve three minutes for rebuttal. Thank you. May it please the court. This case is about an unconstitutional order entered without jurisdiction and a court process that's thus far been inadequately protective of the Constitution. Defendant Canone's injunction was not against people under her jurisdiction, but only against speech. The defense wants us to believe that this is commonplace, but it truly is a novel theory that seems to be an only in Norfolk County thing. Right, so that gets to only in Norfolk County, Judge Canone, which really gets to what I want you to start with, which is mootness, because it seems like this is a very narrow situation involving a judge issuing an order in a courtroom with a certain geographic construction. Like, all of those things seem pretty unique. So why is this not moot? Well, not really, because there was another one of these orders that we've briefed a couple years ago in Norfolk County by a different judge. Judge Canone herself has done this twice. Judge Canone is now in Plymouth, where we have no indication that she's not going to do this again. And to consider this to be moot, you know, most it would be almost like looking at the Constitution as an avocado. It's not ripe until it's rotten. We don't have any ability to. So usually these cases where mootness, with a clearly evading review, it's a statute. So the statute continues to exist and rest there, and then the same conduct keeps happening, and there's the statute. This is different, it seems to me, in that there's a lot of other piece action that has to happen to put us in the situation that we're in. Each judge's order is its own unique order, and maybe this person did it twice. I accept that. But that doesn't really seem to be what we were trying to get at with this doctrine, which is, is this certainly going to just literally keep happening to these people over and over again? Well, it's happened three times in this county alone. But not to these people. No, only twice to these people. In the same case. Well, in two different cases involving the same people, yes. Same problem. Yes, the same problem keeps recurring. So if we don't deal with this problem now, we never will be able to deal with it. This is a pretty unique case that we even had time. If they show up at a courthouse tomorrow to protest outside that courthouse, if this remains in place, if the law of this case remains in place, a judge in that courthouse can now extend their power outside the courthouse, off the courthouse grounds, to anybody that they say they don't want any protests. Not in place. I mean, right? Not in place. This is not a standing order of the Norfolk Superior Court. No, this is... This is an order that this judge entered in the case she faced that was a peculiar case that is over. That's what we're dealing with. But if this same thing has happened three times, how many times do we need it to happen before this is a recurring problem? What is the status of any future cases relating to the Reid trial? Well, we have one case that eventually we're going to find out who killed John O'Keefe, I hope. There will be a criminal trial there. There are multiple civil cases involving the same exact parties. Are any in front of Judge Canone? I'm unaware of any being in front of this particular judge, no. But this courthouse, remember, this is an infection in Norfolk County that, again, if it's three times, I don't know. If I come back a fourth time, a fifth time... The two times of the two Karen Reid trials, the other one is what? Judge Canone doing it another time? No, it was a different judge doing it another time, and then Judge Canone repeating that. So actually, I'm sorry, it's four times. So it's two times before in another case involving some animal rights activist, and then two in this case. This is a habit. This is a pattern. And we're not going to have a 250-odd-day trial, most likely, in which we have even the time that we had here. So unless we have some kind of a pronouncement, if the government wants to say, well, we now recognize that we don't have jurisdiction outside of the courthouse. Every case that they cite to... What I have a problem with is you've gotten so far, and I think the case law likely supports you, that it's evading review. But there's a second question is whether or not these same complaining parties are likely to be subject to the same order again in the future. And so that's where I'm having a hard time seeing anything other than speculation. So I accept that normally a criminal trial is not sufficient time. Yes. But what is the evidence of this recurring in the future other than it has happened in the past? All I can demonstrate is three times, four times it's happened. So I don't know how much of a pattern would I need to demonstrate before I can demonstrate it might happen again. This isn't like a one-off thing that was unique. Nowhere else in the United States has this happened that I can find. If somebody's more creative than me and they can find it. Every case that they point to, Cox was dealing with a statute that's identical to, essentially identical to R-268, 13a and b. Except Cox had a geographic limit, 268 extends to the entire Commonwealth. I think the most instructive case for you to look at is Verlo versus Martinez in the 10th Circuit and its lower court decision, Verlo versus Denver. That case was dealt with almost the same thing, and I feel like it dealt with it perfectly. Because the first question that the trial court asked in that case is, where does the judge get the jurisdiction? The state court judge, where does that state court judge get the jurisdiction or the power to limit this conduct? That was leafleting for jury nullification outside of a criminal trial. And they answered that question by saying that... It must be to preserving the efficacy of the trial that they're trying to manage. I mean, that's what they're going to say. And your point is that this is a public forum, a public street, and so that power doesn't extend that far. But we have all sorts of limitations on public forum. We don't just let people parade when they feel like it. We say you got to get a license because otherwise we'll have chaos. Well, here the issue is the judge has a separate interest in protecting the sanctity of the trial. But that only goes so far, Your Honor. How far? Well, it goes within the courthouse grounds. So in Verlo, that entire... If there's disruptive conduct occurring beyond the courthouse grounds that's interfering with the fair administration of justice, what is the court supposed to do? Same thing I would probably do if there was a disruption outside my house. I would call the police and say that there is a disturbing the peace situation going on. Or if I were a witness, I would call and say that we have a 268, 13A, or 13B violation. We have existing law that if all Judge Canone did is say we need to enforce 268, we wouldn't have a problem. If Judge Canone said there's a noise ordinance violation, we wouldn't have a problem. This obviously must go beyond 268. It must go beyond noise ordinance. It must go beyond disturbing the peace. This is its own separate animal here that doesn't live in any other environment. In Verlo, it was entirely on court grounds. But the unique circumstances of a particular case don't fit or fall squarely within the context of the statutes that you're citing. I mean, what is the court supposed to do? I mean, if the court sees this as a unique kind of disruption to the particular trial and the ordinary remedies aren't sufficient, what is the court supposed to do? Well, there's two problems with that, Judge Thompson. One is that the court would have then what disturbance is there that we have ever had any determination in a Republican government manner to deal with it? 268, we can repeal that. 268 went through certain processes to get passed. The noise ordinance, same thing. If the town of Dedham had passed an emergency ordinance that it has to block off these streets, that might be another situation. But here, we had no actual factual development. I go back to the Verlo case. In Verlo, the lower court actually went through a fact-finding mission. Here, instead, Judge June at the District of Massachusetts acted more as an appellate judge, deciding that he was going to accept the findings of fact by Defendant Canone. You don't do that. You have to have some kind of due process. There was no due process over these individuals, over anyone. It was simply a decree. So if Judge June… Was the sanction contempt, I assume? I mean, is that what should have… I mean, if someone's in violation, they would be in contempt of a court order? If that were the case, then they would have had due process. But no, it's not. Well, this is the part I never really understood. What was this? Just an order for the police to throw people off the sidewalk? It seems to me it's a court order. The sanction would have to be you go before the judge who holds you in contempt for violating her order. Well, instead, what the state police did is they said that if you were inside that zone, even with a hat with one-inch lettering on it facing the other way, you were trespassing. And that's the part that Judge June said that seems problematic, right? Judge June said some of it seems problematic, but then he still gave us… What was strange is he then… Let me just zero down on this. Let's say this was a court order and it said, and people who violate it will be held before me in contempt. My order is the way she wrote it. Do you think that is beyond her power, or is it the lack of whatever, a contempt, which I thought was implicit in it, but now you're telling me it's not? No, there is no contempt. So it would be a different case, but I would still say, how do you issue a court order against somebody who hasn't had an opportunity to be heard, who hasn't been brought before the jurisdiction of the court, infringing on their First Amendment rights with no 14th Amendment due process? Was this just a sanctionless order? I don't understand. What are the sanctions? Well, the sanctions are that the state police used this order as its justification to decide that if you were in this prohibited zone, you were trespassing. And that remains at least, as I understood Judge June's order, a live problem. I mean, maybe it's mood. I don't know. But there might be damages for these people, so it wouldn't be, right? But that's what his order says, basically. You know, you might not like how he wrote it at the end, and I understood that complaint that he's not really talking about the mens rea, but that's in the order. So you have an order with mens rea. You have the judge. You're saying the problem was the police took too much liberties with her order, but that's their problem. I don't understand what she then did wrong if ultimately, to me, it seems like if you violated Judge's order, you've got to go before the judge. Well, if that had been what it was, but that's not what it was. What it was is after you've—what she then said in order to try to correct the problem, instead of simply saying, we're going to strictly enforce 268.13a.13b, the noise ordinances, and any other existing law, she simply decreed an area outside of her jurisdiction. She does not have jurisdiction over the public park's private property or the lawn of the Dedham Public Library. This extended way too far, and Judge June, even after that, looked at it and then gave us this list of prohibited content that even then he was saying you couldn't do. But that all had to be with the mens rea piece as part of it, and maybe he didn't quite say it that way, but if you're wearing an FRK hat, the order itself said it had to be with the intent to interfere with the administration of justice. So if there's an argument that it doesn't, then that's an argument, right? But at that point, the speech is already chilled as it is right now. My clients can't go outside of a courthouse anywhere, let alone Norfolk County, with this problem hovering over them outside of every courthouse. That's the same rule as to whatever the 268. I mean you can't do things outside courthouses that interfere with the administration of justice, and you'd have to prove intent. And so to me they overlap, except that one has the usual criminal processes attached, and what I thought the purpose of this was, it had a contempt attached, which can be done quicker in a more summary fashion than a grand jury in a trial, and that that's what she was trying to achieve. But that's not what you're telling me, I guess. No, it's not. Had that been the case, we would have a different case before you. What we have here is something completely different. I see I'm out of time. I don't understand why. Well, I don't understand why either, because if there is existing... That's completely different if there was a process to bring someone before the court to adjudicate whether they violated the order, whether they were in contempt. Well, there wasn't. Well, mens rea, whether there was mens rea, there was a process for determining whether that person brought before the court had the mens rea to disrupt. Well, the problem with Judge June's order, then, is then he has this laundry list of things for which there is strict liability. He didn't say there has to be a mens rea. That's in the order. I mean, I think he's giving... Well, that needs to be reversed, I think. Thank you. Thank you, counsel. At this time, would counsel for the government please introduce himself on the record? Yes, thank you. Good afternoon, Your Honors. Rob Fisher on behalf of the Massachusetts Trial Court and Judge Canone. A.J. Hitt is here with me today. He represents the law enforcement defendants, the state police, and D.A. Morrissey. I'm going to go a bit out of order since I heard some of that questioning. I would like to bring the court's attention to the supplemental order that was issued by Judge Canone after grant one. In that order, there is a mens rea requirement as requested by the First Circuit. And there's also, if you look at number five on her order, it says any person whose activity has been restrained by an officer enforcing this order may request review by a judge of the Superior Court. And that actually happened in the lower court. Judge Doolin had a hearing, I believe a day or two before the last hearing before Judge June, in which he found the protester did not, in fact, violate the face of this order. If a police officer came up to me and said, you can't wear that hat. And I say, yes, I can. The police officer says, you know you can't. What happens then? And Judge, I'm glad you raised that. And also, I'm happy to answer any factual questions about this courtroom. 22 years ago, I had a Superior Court trial in that courtroom. So, I'm very familiar with the layout and the way the sound actually gets into that courtroom. So, you would be in violation if you were, say, the free Karen Reed hat, the FKR hat. Now, they essentially got what they wanted here. Not only the men's wear requirement, but they were allowed to have quiet demonstrations within the buffer zone. My question is, if I, the person with the hat on, are having a dispute about the police with the police officer, the police officer says, you can't do that. I say, yes, I can. We are at loggerheads on that point. Does he beat me up? Does he take me before the judge to see what happens next? Hopefully, you don't get beat up. AG is here to answer any questions about law enforcement issues. However, what goes to the intent? It depends what your intent is, Judge. So, if you're standing...  Well, Judge Doolin would discern that, or the judge, once you're brought after it's enforced. But it is something the state police would have to examine. They'd have to be able to tell what your intent is. If you're just walking by and the jury isn't in the building, then it doesn't apply. This is if you're trying to influence the administration of justice and influence that trial, which many of these protesters were trying to do. So, if you were just walking down the street with that backwards and nobody could see it, clearly, you don't have the intent to interfere with the trial. But if you have it on facing forward, you're looking maybe up where the jurors are deliberating, then you would have the intent. Is an officer just making an on-the-spot adjudication of that? I mean, that's a complicated question. It is somewhat complicated, Your Honor. I will grant you that. But there's really no other way to enforce this order or to make sure that the administration of justice isn't interfered with. What we had here was protesters who were trying to inform the jurors inside the courtroom as to what they believe should or shouldn't happen to Karen Reed. And the judge couldn't allow that to happen. They obviously still had their First Amendment right to protest. But how is walking around with a hat on that says FKR when the jury is indoors, how is that an intent to interfere with the administration of justice? That's what I'm struggling with. You said that they could have quiet protests, but it doesn't really seem like they could if they can be kind of jailed or fined or something simply for wearing a hat when there weren't any jurors present outdoors. Yeah, Judge Dunlap, and I think that's why it's important. In the order, it says to interfere with the administration of justice and the jurors or other core personnel walking in and out of the courthouse. So if you're wearing that hat and you're standing next to the courthouse in the morning when the jurors are coming in, I think it would be safe to assume you would have the intent to influence those jurors if you're looking at them with the hat on. But there's, yeah, there's two different things going on. You have the one paragraph in the order that says, you know, if you're near where the jurors come in and out of the courtroom, you can't demonstrate. And so there I kind of understand the idea of wearing paraphernalia. But then there's another paragraph later on that says, well, you can't demonstrate even when you're somewhere other than where the jurors are present with a mens rea requirement. But the mens rea requirement seems to have been read out when somebody is quietly demonstrating so they can't be heard within the courtroom and they're simply walking around without any jurors present. Correct. Well, and this is a thought as a trial lawyer previously in this building with the U.S. Attorney's Office, I know the jurors here, when they deliberate, sometimes they have a view outside of the courthouse. And I've had trials here that there were a large media presence. I would worry if there's somebody out there with a sign holding up and the jury may see that. I had a trial in this very courtroom down in Norfolk County. I believe, unless they've changed it, it has been 20 years. But where the jurors deliberated, I believe, did look out onto the main road. Well, what do we have in the record on that? I mean, we can't just take your statements on it. What's in the record that suggests that there's any link to the administration of justice if somebody's walking around outdoors with a hat on? Yeah, so if you're standing across the street with that on and your intent is not to signal that to a juror that could be looking out a window during deliberations or even have people honk their horns. One issue at this trial was people that had hats on had signs and pickets. People were honking their horns, and that was disrupting what was happening in the courtroom. And I would say, so therefore, I was going to get to this later, but even though it was content neutral, it could have been somebody saying, please honk if you disagree with what this witness is saying or please honk because you like the Celtics. If you're doing it with the intent to disrupt the administration of justice, I think it violates the order. There is a way to have a quiet demonstration or even speak to the media. My brother, in their briefing, they do say one of the reasons they bring the suit is because they want to be where the action is. They want to be where the media is. What does this add? I mean, if this is how it works, I mean, to me, it sounds like you want to remove people. That's the goal, not to bring someone for a judge, like remove them. Well, it seems to me the statute lets you remove them. You can arrest them. What can you do under this order? I mean, what's the authority to do anything under this order? It's just a judge saying you can't. OK, then the next thing is what? Well, you can. You can do it. You have to move outside the buffer zone. OK, but I can't do it here.  And that's because it interferes with the administration of justice. And if the police don't want me there, I understand where a statute that I have violated in this probable cause allows them to arrest me. And they could take me away and they have to go through all that process. I get that. What's supposed to happen here when I'm in violation of her order as opposed to the statute? What? You would request review under the order in paragraph five. And then what happens? I go inside the building to a judge. It actually happened. Yeah. Yeah. They went. I don't know if it was Grant or somebody else. And I believe it was around the same time, like I said, one of Judge June's hearings. I'm not sure he was aware that happened. Went before Judge Doolin. Let me break that down a little bit more. The trooper says you're in violation of a court order. I'm taking you before the judge. Or does the trooper say you got to move back into a different area? And yes, you can continue to protest, but not here. I think it could happen one of two ways, Your Honor. You could be restricted from the buffer zone, move 200 feet away. And then you would appeal under paragraph five to the Superior Court for a hearing as to why that happened and why that should not have happened to you if you were demonstrating quietly. Or if you were just somebody walking through the buffer zone, talking to a friend, and were overheard by a trooper and that affected your freedom of speech. Or you could have been arrested. I believe there were some people that were arrested, Your Honor. And I believe one- Under that order or the statute? Under the statute. Well, that's what's interesting, Judge Fraim. The way it would work criminally in the state system, and my brother A.G. Hitt can jump in if he knows better than I, but I was a state prosecutor, the state trooper would have to bring an application for a complaint in the district court that you violated a state statute, not that you violated the order. I believe like what you were saying before, if you're in violation of the order, there would have to be a contempt proceeding. But how did it actually work, you were about to tell us? I believe in one instance, the state police did file an application for a criminal complaint, either disturbing the peace or one of the criminal statutes. It went before a clerk at Dedham District Court, and they denied the complaint. They said there was not enough probable cause to issue that complaint. So that's the end for that individual. If that had issued, then you would have gone through the criminal justice process and been arraigned and fought your case. I'm not sure if that happened. I'm only aware of the one where the complaint did not issue. I'm also aware of a protester who was affected by the supplemental order, and they did initiate the proceeding to go before a superior court justice in Dedham Superior Court. It was not Judge Canone. It was Judge Doolin who was there that day. And he found, after hearing, that in fact that person was not in violation of the order. So when you say they initiated the proceeding, the protester or the state? What seems like the state would trigger the removal, and so it says here, any person whose activity has been restricted by an officer, so that could be moving you 200 feet beyond the buffer zone, may request review by a judge of the superior court. Which request shall be heard as expeditiously as possible? And I believe that did happen. I think either Judge Doolin heard it the same day or within a day or two and then decided that matter, issued an opinion that that protester was in fact not in violation of this order. I'm not sure what the penalty would have been, presumably a contempt of court proceeding, maybe pay a fine or something, or be issued another order not to violate the order again. Or maybe be restricted from the grounds of the courthouse, potentially. But again, I'm speculating in regards to that. What about mootness? Yeah, so I was going to start with mootness, Your Honor. This is moot. This order expired over a year ago. We all know Karen Reed was acquitted. Actually, interesting fact, the jurors and the people in the courtroom couldn't hear the verdict being read in that courtroom because the protesters outside were so loud. I think that demonstrates what Judge Canone was dealing with at the time and why she was issuing orders like this. What do you say to that this is a pattern in practice in the Norfolk County Superior Court and needs to be dealt with? Happy to speak to that, Your Honor. I believe the order prior to this was from Judge Fishman. I believe it was in 2017 or 16, so it was at least 10 years. That was also a very unique, unusual case. It involved somebody who was charged with, I think, cruelty to animals. There were protesters that showed up. If it's in place, why isn't it capable of repetition? Because the precedent is that this kind of order is permissible. I don't think it's reasonable to assume that it would happen again. It's pure speculation at this point. Judge Dunlap, I believe you asked, what is the current status of the Karen Reed litigation? There is a civil suit, I believe, here in this courthouse, which we know this courthouse is much, much different than the Norfolk County Courthouse. There are no windows. I was here during the Frenet trial and the Bulger trial. Believe me, I don't believe any of those jurors had any issues entering. Do you know anything about the 2016, whatever, did you say Fishman? I do. Is it different than this order? It is, Your Honor. Much broader. I think the Commonwealth, when they requested this, originally this order from Judge Canone had modeled it on Judge Fishman's order. That was 500 feet away from the courthouse. Obviously, not narrowly tailored like this. It didn't have the mens rea requirement that was added in? It did not. So, I mean, I guess what makes it, I guess what I'm thinking about this is really for your friend, I guess, but these are all going to be different. It's not like the statute that we look at and say this statute is being applied in the same way over and over again. I mean, these orders are all tailored to their cases, I would think. And all unique, and we're not sure another one's going to happen again. Even the Karen Reed civil trial, one of them is going to be in Plymouth County Courthouse. That is also a very unique setting, a very modern building. That's your answer. I mean, the only way I can see that they are the same is there's just no power to issue an order beyond your courthouse. And judges cannot legally issue orders for the sidewalks. What's the answer to that? Well, I believe they can if what is happening on those sidewalks is affecting the administration of justice in their courtroom. And I believe, as Justice Roberts said, a 2022 case, these should be islands of calm. It was a voting rights case, but he then said, similar to a jury returning a verdict. Karen Reed. Do you characterize that as the inherent authority of the court to protect the administration of justice? Correct, Your Honor. And as I believe in Grant one, the First Circuit said, this is a murky area of Massachusetts law. However, you have to remember, this went to the Supreme Supreme Judicial Court back in 2024 during the first order, and they they upheld it. Now, I'm not sure that issue. I don't believe that issue is exactly briefed the jurisdiction, but the jurisdiction will go the court's inherent authority to manage that trial. And if there are people on a public sidewalk who are interfering with that trial, there are two things that can be done. The state police or the local police could arrest those people and charge them criminally. And I think that is usually what would happen. Typically, if you have one or two people out there who are disturbing the peace and interrupting a trial, I think you're going to see that happen. What is unusual here is you had hundreds and hundreds of people outside. I agree. Could the state police have arrested all of them? Would have been very, very difficult. You would have probably had a triple or quadruple the police force. You would have needed wagons to haul these people into a district court. I don't think that's reasonable. I think what Judge Canone did here under the circumstances would tailor a very narrow order that solved the issue. And I think it's important for us all to take a step back and realize this was a criminal trial of a defendant who was looking at life in prison upon a potential conviction. So I think, therefore, we get back to what Justice Roberts said. This should be an island of calm. It is very important for jurors not to hear what's happening outside or hear non-evidence in making decisions. One question for you. If we disagree with you, and this is going to your First Amendment argument, if we disagree with you that this was content neutral, have you waived your argument that it survives strict scrutiny? No. All I saw in your brief was a single footnote on that point. Yeah, I don't think we waived around. You would still look at – the most important thing to look at is the order, right, and the mens rea requirement, and that it is content neutral in that. And I think the – Your argument in your brief, as I read it, was that it was content neutral and it survives intermediate scrutiny. I didn't see any developed argument that it survives strict scrutiny. We have it in the footnote, Your Honor, and our position is it is intermediate scrutiny because it is content neutral. And I think the – The only thing that you can point me to is the footnote on that – on strict scrutiny. Well, Your Honor, we do lay out the facts of what she did, how she did it, and how it affected people. And I think if you look at Judge June's order, I think even though he comes to a different conclusion than us – and we do brief that, that we understand he came to that. We don't agree with it. But the factual analysis actually comes out to be content neutral because if somebody is out there honking a horn to disturb the trial, clearly we don't know if they're in favor of Karen Reed, the government, or something in between. Clearly what they're doing is interfering the administration of justice, and therefore it's content neutral. But not necessarily the quiet demonstration with the FKR on the hat. Yeah, the quiet demonstration – well, that – but it can affect, as you know, the First Amendment can affect some speakers differently than others and still be content neutral because you have to look at the face of the order. And I think if you look at the face of the order with the men's prayer requirement and the fact that you are allowed to protest quietly, and there's really no agenda at all as to what you can and can't say as long as it is not influencing jurors or court employees or affecting the administration of justice. So I think it is content neutral and it does satisfy intermediate scrutiny, but also strict scrutiny, Your Honor, because of the way it facially reads. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellants please reintroduce himself on the record at the beginning as a three-minute rebuttal? Thank you. Mark John Randazza for the appellants. You know, my brother said that this situation was unique and unusual, but it's always unique and unusual when the government tries to suppress speech. It's never the exact same situation. What won't be different, as Your Honor asked, is the analysis of where this jurisdiction comes from. You can't just say inherent authority over the entire commonwealth. Is there a special zone that we're going to find for the first time in American jurisprudence that this inherent authority extends beyond the courthouse? In Verlo, it did not. In Verlo, it was courthouse grounds. Even though it was a public forum, it was still courthouse grounds. This is a traditional public forum. If there is specific interference beyond the courthouse ground, intentional specific interference, you're saying that the court is helpless to come up with a prophylactic provision for that? Yes, I would. I would say that existing statutory law covers that issue. We don't need this additional order. If this additional order does nothing more than 268 or the noise ordinances do or any other existing law does, then why is it here? It must be here for a reason. That reason, the purpose of a thing is what it does. The way that this actually worked, what happened, Mr. Delgado was walking down the street and one of the police tore a sticker off of his jacket saying, that's got to go because it violates the order. Mr. Derosier was a reporter who was there who was physically manhandled and injured. You told me in the last time you were up here that if it had been not that, I'll just accept what you just said is true, not that, but if you violate the order, you will be brought before the judge who will have a contempt hearing and you can make whatever arguments you want. If that had been it, is it your position they can't do that either if it extends to the sidewalk beyond the courthouse? Yes, it is. It's just no authority whatsoever to go beyond the building because the judge's jurisdiction is limited to the building. That is my position, yes. I just don't see, because if it's 200 feet, why not 500? Why not 1,000? Why not the entire Commonwealth? Now, 268 does extend. 200 and 500 is because at 500 feet, it may not be reasonable to assume that someone protesting that far away can actually interfere with the proceedings. Well, that's not what 268 says. 268 says it wouldn't matter if they were in Provincetown or North Adams. If they were doing something trying to actually negatively influence this case, engaging in witness intimidation, there is no limitation. I'm not challenging 268. Somebody could be holding up a sign, again, in Lee, Massachusetts, saying that they were going to harm somebody. But here, what happened, the way that they used this order was to manhandle reporters, was to arrest people for trespassing, and the trespass was the fact you violate the order in this area, you're arrested for trespassing. That's what happened to Ms. Walsh and Judge Dunlap. You asked a great question there. How does this, in any possible way, affect anything inside the courtroom? I mean, I'm familiar with that courthouse, too. I held a hearing, conducted a hearing from, in this case, from a courtroom that they gave me, which didn't overlook the front of the building. This is not that unique of a building. It's not some special building where everybody's exposed to all of everything on the street. If somebody is sitting in that jury box, behind a window, and they can see out that window, see a one-inch lettering on a hat turned the other way, we've got much more than a 268 problem. Thank you. Thank you, Your Honors. Thank you, Counsel. That concludes arguments.